UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TINA M. CARR,

                Plaintiff,
                                            MEMORANDUM & ORDER
    -against-                          14-CV-3257(JS)(SIL)

NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEMS,

                Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:       Lance D. Simon, Esq.
                     Simon Law Group, PLLC
                     120 Court Street
                     Riverhead, NY 11901

For Defendant:      Peter D. Stergios, Esq.
                     Christina M. Schmid, Esq.
                     McCarter & English, LLP
                     245 Park Avenue, 27th Floor
                     New York, NY 10167

SEYBERT, District Judge:

       Plaintiff Tina M. Carr ("Plaintiff") commenced this action against defendant North Shore – Long Island Jewish Health System, Inc. ("Defendant"), alleging unlawful discrimination and failure to hire on the basis of sex and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq. Currently pending before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 19.) For the following

reasons, Defendant's motion is GRANTED, and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

BACKGROUND

I. Factual Background[1]

Plaintiff is a transsexual female and a member of the Unitarian Universalist Church. (Am. Compl., Docket Entry 18, ¶ 7.) Plaintiff was a student of the Sanford Brown Institute in Melville, NY ("Sanford Brown"), and was working toward her Associates degree in Applied Sciences. (Am. Compl. ¶ 7.) In the summer of 2012, Plaintiff was among a group of students proposed by Sanford Brown to Defendant for a medical assistant extern position. (Am. Compl. ¶¶ 9-10.) On August 13, 2012 and without an in-person interview, Defendant selected Plaintiff for an externship. (Am. Compl. ¶¶ 12-13.)

Before her externship began, Plaintiff interviewed for a full-time, position with Christine Torre ("Torre"), an employee of Defendant. (Am. Compl. ¶ 14.) There, Torre explained that successful completion of the externship program would culminate in an offer of employment with Defendant. (Am. Compl. ¶ 15.) In subsequent correspondence, Plaintiff continued

---

[1] The following facts are taken from the Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

to express her interest in Defendant as an employer. (Am. Compl. ¶ 16.)

Plaintiff began her externship on August 27, 2012 under the supervision of Christine Demers ("Demers"). (Am. Compl. ¶ 17.) Plaintiff alleges that even though Demers was typically cordial with Plaintiff one-on-one, she harbored a discriminatory animus against Plaintiff based upon her gender and religion. (Am. Compl. ¶¶ 18, 24-25.) Plaintiff alleges that despite their friendly one-on-one interactions, Demers consistently demeaned Plaintiff in the presence of others. (Am. Compl. ¶ 18.)

Although Plaintiff alleges that Demers routinely disparaged her in the presence of others, she recounts only one incident with any specificity. On September 25, 2012, while Plaintiff was working under Demers, Plaintiff alleges that she entered into a patient's room in which Demers and the patient's mother were speaking. (Am. Compl. ¶¶ 24-25.) Demers, unaware that Plaintiff entered the room, allegedly told the patient's mother "that Unitarian Universalist is not a religion that is recognized by Jesus, and the he-shes . . . and the gays will needs to answer to Jesus someday." (Am. Compl. ¶ 25.)

In addition to her overhearing Demers' remark, Plaintiff alleges that she sometimes heard "chatter," or sometimes received "stares" from other employees when she

3

attempted to use the female employee restroom. (Am. Compl. ¶ 20.) Plaintiff does not describe the contents of this chatter, its speakers, or which employees inappropriately stared at her.

On September 25, 2012, Plaintiff received an email from Torre asking her not to return to her externship. (Am. Compl. ¶ 27; Schmid Aff., Docket Entry 21, Ex. 4.) Plaintiff responded to Torre's email the following morning, discussing Demers alleged mistreatment. (Am. Compl. ¶¶ 28, 30.) Plaintiff did not receive a response from Torre until Plaintiff received a copy of Demers' evaluation of her, dated on October 3, 2012. (Am. Compl. ¶ 31.)

From these facts, Plaintiff alleges that Demers executed a systematic attack against Plaintiff by shaming her and then privately being nice to her, with the objective of Plaintiff being terminated before the externship concluded in order to preempt her employment with Defendant. (Am. Compl. ¶ 29.) Plaintiff alleges that all, or nearly all, of Plaintiff's peers at Sanford Brown that completed an externship with Defendant were offered and accepted permanent positions with Defendant. (Am. Compl. ¶ 33.) Plaintiff further claims that it is Defendant's custom and practice to offer permanent positions to externs upon successful completion of the externship program. (Am. Compl. ¶ 34.)

4

II. Procedural Background

On August 5, 2013, Plaintiff filed an administrative complaint with the New York State Division of Human Rights (the "Division") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on account of sex and religion. (Schmid Aff., Ex. 2.) On or about February 27, 2014, Plaintiff received a Notice of Right to Sue from the EEOC. (Am. Compl. ¶ 5.) On October 6, 2014, Plaintiff filed this action, asserting claims for failure to hire based on sex and religion under Title VII and the NYSHRL. (Am. Compl. ¶¶ 35-36.)

DISCUSSION

The Court will first set forth the applicable legal standard before turning to the Health System's motion to dismiss more specifically.

I. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action,

5

supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II. Failure to Hire

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NYSHRL contains a similar provision. N. Y. Exec. Law § 296 (McKinney).[2] Thus, in order to state a claim for failure to hire under either Title VII or the NYSHRL, a plaintiff must allege that she applied for a position, that she was qualified for that position, and that she was rejected under circumstances giving rise to an inference of unlawful discrimination. Tex. Dep't of

---

[2] Because the standards for establishing a claim of discrimination under the NYSHRL are the same as those under Title VII, the Court conducts a singular analysis. Mittl v. New York State Div. of Human Rights, 100 N.Y.2d 326, 330, 794 N.E.2d 660, 662 (2003).

6

Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).[3]  Defendant contends that Plaintiff has (1) failed to adequately plead that she applied for a position with defendant, and (2) if she did apply, failed to plead that she was rejected under circumstances giving rise to an inference of discrimination.

   A.  Failure to Apply

   Defendant first argues that Plaintiff did not apply for employment with the Health Systems.  (Def.'s Br., Docket Entry 20, at 8.)

   An essential element of a failure to hire claim is that a plaintiff allege that she applied for a specific position and was rejected.  Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998).  Although a general request for employment is insufficient, id., a formal application is not always

---

[3] To the extent the Amended Complaint can be interpreted as attempting to state a cause of action under either Title VII or the NYSHRL other than failure to hire, those claims are DISMISSED, as it is well settled that unpaid interns are not subject to the protections of either statute. Wang v. Phoenix Satellite Television US, Inc., 976 F. Supp. 2d 527, 532-33 (S.D.N.Y. 2013) (holding that an unpaid intern is not considered an employee because compensation is the threshold issue in determining the existence of an employment relationship under both Title VII and NYSHRL); O'Connor v. Davis, 126 F.3d 112, 115-16 (2d Cir. 1997) (stating that there is an "essential condition of remuneration" that has been recognized in the Second Circuit and that an unpaid intern is not an "employee" under Title VII) (internal quotation marks omitted); Tadros v. Coleman, 898 F.2d 10, 11 (2d Cir. 1990) (holding that as a visiting lecturer, plaintiff received no salary, and was not an employee under Title VII).

7

required, Wang v. Phoenix Satellite Television US, Inc., 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013). Instead, a plaintiff may satisfy this element by alleging that "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004). Moreover, when an applicant is unaware of open positions because an employer does not post vacancies, it is sufficient for a plaintiff to express interest in a particular class of positions. Williams v. R.H. Donnelley Corp., 368 F.3d 123, 129 (2d Cir. 2004).

By participating in the externship that both Defendant and her understood would lead to an offer of permanent employment, Plaintiff expressed her interest in a certain class of positions. See Wang, 976 F. Supp. 2d at 538. Additionally, Plaintiff alleges that she at least attempted to comply with the informal application procedures--completion of the externship program. That the internship program was Defendants informal application process is apparent; "Ms. Torre explained that completion of the externship would culminate in employment with Defendant." (Am. Compl. ¶ 15.) Additionally, all or nearly all of her Sanford Brown peers who were selected by Defendant to extern continued onto permanent positions after graduation from

8

the externship, and it is Defendant's custom and practice to employ externs in permanent positions after graduation. (Am. Compl. ¶ 33.) Accordingly, Plaintiff has sufficiently alleged that she applied for employment with Defendant.

B. Circumstances Supporting Inference of Discrimination

Next, Defendant argues that the rejection of Plaintiff for a full time position did not occur under circumstances supporting an inference of either gender or religious discrimination. The Court agrees.

Although Plaintiff alleges that Defendant orchestrated a "systematic attack" in order to preempt her from earning full-time employment, she recounts only one incident of any arguable gender or religion-based bias: that she overheard Demers state that "he-shes . . . and the gays will need to answer to Jesus some day." (Am. Compl. ¶¶ 25, 29.) It is well-settled, however, that a single stray remark, without more, is insufficient to state a claim for discrimination. See, e.g., Danzer v. Norden Sys., 151 F.3d 50, 56 (2d Cir. 1998); Jowers v. Family Dollar Stores, Inc., No. 09-CV-2620, 2010 WL 3528978, at *1, 3 (S.D.N.Y. Aug. 16, 2010) (noting that the single statement that "black people are lazy and incompetent" just eight days prior to the plaintiff's termination was a stray remark insufficient to establish an inference of discrimination on its own), aff'd, 455 F. App'x 100 (2d Cir. 2012); De La Pena v.

9

Metro. Life Ins. Co., 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) (applying Jowers to motion to dismiss standard), aff'd, 552 F. App'x 98 (2d Cir. 2014). Indeed, the remark at issue here is even less probative of discriminatory animus against Plaintiff because the remark was not directed at her. See Green v. Harris Publ'ns, Inc., 331 F. Supp. 2d 180, 192 (S.D.N.Y. 2004) (granting summary judgment to defendant when plaintiff overheard racially discriminatory comments not directed to plaintiff); Velez v. SES Operating Corp., 07-CV-10946, 2009 WL 3817461 at *11 (S.D.N.Y. Nov. 12, 2009) (holding that a comment made by the defendant overheard by plaintiff was not probative of a discriminatory motive).

Plaintiff attempts to supplement her allegations of Demers' remark by explaining that Demers was hostile to Plaintiff on other occasions. However, given the complete lack of specificity regarding these other occasions, the Court gives these threadbare allegations no weight. Iqbal, 556 U.S. at 678. Plaintiff's remaining allegations that she overheard "chatter," or received "stares," are similarly vague at best, and provide no further indicia of discrimination.

Because Plaintiff did not adequately plead that Defendant's rejection of her candidacy for full-time employment arose under circumstances giving rise to an inference of discrimination, Plaintiff's claims fail.

III. Leave to Replead

Although Plaintiff has not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)). Although Plaintiff's claims fail at least in part due to the lack of specificity in the Complaint, the Court finds that there is at least some "indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly Plaintiff is GRANTED leave to replead.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Docket Entry 19) is GRANTED, and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE to the filing of a Second Amended Complaint. Any Second Amended Complaint must be received within thirty (30) days of the date of the entry of this Memorandum and Order. If the Court does not receive a Second Amended Complaint

11

within thirty (30) days of the date of the entry of this Memorandum and Order, Plaintiff's claims will be dismissed with prejudice.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: July __30__, 2015
 Central Islip, NY