```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
TINA M. CARR,

                Plaintiff,
                                          MEMORANDUM & ORDER
          -against-                       14-CV-3257(JS)(SIL)

NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEMS, INC.,

                Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Lance D. Simon, Esq.
                    Simon Law Group, PLLC
                    120 Court Street
                    Riverhead, NY 11901

For Defendant:      Peter D. Stergios, Esq.
                    McCarter & English, LLP
                    245 Park Avenue, 27th Floor
                    New York, NY 10167
```

SEYBERT, District Judge:

Plaintiff Tina M. Carr ("Plaintiff") commenced this action against defendant North Shore – Long Island Jewish Health System, Inc. ("Defendant"), alleging unlawful discrimination and failure to hire on the basis of sex and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; and the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290 et seq. Pending before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 28.) For the reasons that follow,

Defendant's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

Plaintiff is a transsexual female and a member of the Unitarian Universalist Church. (SAC, Docket Entry 26, ¶ 7.) Plaintiff was a student of the Sanford Brown Institute in Melville, New York ("Sanford Brown"), and was working toward her Associates degree in Applied Sciences. (SAC ¶ 7.) In the summer of 2012, Plaintiff was among a group of students proposed by Sanford Brown to Defendant for a medical assistant extern position. (SAC ¶¶ 9-10.) On August 13, 2012 Defendant selected Plaintiff for an externship without having an in-person interview. (SAC ¶¶ 12-13.)

Before her externship began, Plaintiff interviewed for a full-time, position with Christine Torre ("Torre"), an employee of Defendant. (SAC ¶ 14.) During the interview, Torre explained that the successful completion of the externship program would culminate in an offer of employment with Defendant. (SAC ¶ 15.) In subsequent correspondence, Plaintiff continued to express her interest in Defendant as an employer. (SAC ¶ 16.)

Plaintiff began her externship on August 27, 2012 under the supervision of Christine Demers ("Demers"). (SAC ¶ 17.) Plaintiff alleges that even though Demers was typically cordial with Plaintiff one-on-one, she harbored discriminatory animus

---

[1] The following facts are taken from the SAC and are presumed to be true for the purposes of this Memorandum and Order.

against Plaintiff based upon her gender and religion. (SAC ¶¶ 18, 31-32.) Plaintiff alleges that despite their friendly one-on-one interactions, Demers consistently demeaned Plaintiff in the presence of others. (SAC ¶ 18.) For example, on one occasion, Demers asked Plaintiff to assist in the collection of blood from a patient. (SAC ¶ 19.) As Plaintiff conducted the procedure, Demers '"huffed and puffed' and acted noticeably annoyed with [Plaintiff] despite the fact that [Plaintiff] did nothing wrong." (SAC ¶ 19.)

In addition, Demers yelled at [Plaintiff] numerous times while she assisted Demers with patients. Demers would often ask Plaintiff to hand her medical instruments by pointing to the instruments rather than articulating which instrument she wanted. (SAC ¶ 20.) If Plaintiff retrieved the wrong instrument, Demers would scream "'what is wrong with you.'" (SAC ¶ 20.) Plaintiff similarly claims that Demers "belittled" her by assigning her to package dog treats for a pet fair. (SAC ¶ 21.)

Plaintiff also alleges that she was repeatedly locked out of the bathroom used by Defendant's female employees. (SAC ¶ 25.) Several times when she attempted to access the bathroom she heard "chatter," and was subject to "stares" from unnamed employees. (SAC ¶ 25.) On one occasion, after encountering a locked ladies room, Plaintiff asked Demers why the bathroom was locked and Demers replied that Plaintiff "was to use the public

3

restroom, and not the restroom designated for the female employees in the unit where she served as an extern." (SAC ¶ 27.) Plaintiff also alleges that Demers called Plaintiff's sex into question on another occasion. Specifically, prior to an examination of a female patient, Plaintiff was "left behind a closed door" and told by Demers that "only females were permitted beyond this point." (SAC ¶ 28.)

Despite the adversity Plaintiff complains of, she had a positive meeting with Torre on September 14, 2014, during which Torre informed her that she was "performing as expected." (SAC ¶ 30.)

On September 25, 2012, however, Plaintiff participated in a conversation with Demers and other staff members. During the conversation, Ms. Demers inquired about Plaintiff's religion, and Plaintiff told her that her "church catered to people of alternative lifestyles." (SAC ¶ 31.) In response, "Demers told [Plaintiff] that Jesus did not recognize such a religion -- citing her own background as a preacher's daughter from the South." (SAC ¶ 31.) That same day, Plaintiff recounts that she overheard Demers telling a patient's mother that the "Unitarian Universalist is not a religion that is recognized by Jesus and people like her, and the he-shes, . . . and the gays will need to answer to Jesus some day." (SAC ¶ 32.)

The following morning, Plaintiff received an email from Torre

4

asking her not to return to her externship. (SAC ¶ 34; Schmid Affirm., Docket Entry 21, Ex. 4.) Plaintiff responded to Torre's email the following morning, discussing Demers alleged mistreatment. (SAC ¶¶ 35, 37.) Plaintiff did not receive a response from Torre until Plaintiff received a copy of Demers' evaluation of her, dated on October 3, 2012. (SAC ¶ 38.)

Based upon these facts, Plaintiff alleges that Defendant failed to hire her based upon sex and religion in violation of Title VII and the NYHRL. (SAC ¶¶ 43-43.) Plaintiff alleges that "all, or nearly all," of Plaintiff's peers at Sanford Brown that completed an externship with Defendant were offered and accepted permanent positions with Defendant. (SAC ¶ 40.) Plaintiff further claims that it is Defendant's custom and practice to offer permanent positions to externs upon successful completion of the externship program. (SAC ¶ 41.)

Plaintiff commenced this action on May 27, 2014. By Memorandum & Order dated July 30, 2015 the Court dismissed Plaintiff's Amended Complaint, finding that "Plaintiff did not adequately plead that Defendant's ejection of her candidacy for full-timeemployment arose under circumstances giving rise to an inference of discriminatory animus." Carr v. N. Shore-Long Island Jewish Health Sys., No. 14-CV-3257, 2015 WL 4603389, at *4 (E.D.N.Y. July 30, 2015). However, the Court allowed Plaintiff to amend her Complaint and Plaintiff filed the SAC on August 29, 2015.

5

On September 28, 2015, Defendant again moved to dismiss and Defendant's motion is currently pending before the Court. Defendant argues that: (1) Plaintiff's case should be dismissed as speculative, (2) Plaintiff's unlawful discrimination claims fail because Plaintiff was not Defendant's employee, and (3) Plaintiff's failure to hire claim is still deficient because Plaintiff has not alleged that she was denied permanent employment with Defendant because of her sex and religion. (Def.'s Br., Docket Entry 30, at 6-11.) Defendant also argues that Plaintiff's state law claim is barred by the election of remedies doctrine. (Def.'s Br. at 11-12.)

## DISCUSSION

The Court will first address the applicable legal standards before turning to Defendant's motion more specifically.

I. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action,

6

supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 127 S. Ct. at 1949; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

II. Defendant's Blanket Assertion that Plaintiff's Case is "Speculative" is Meritless

Defendant first argues that Plaintiff's allegations should be dismissed as "speculative" because Plaintiff questioned in her final email to Torre whether or not she was fired because of her gender, stating in the email, "was it my Gender, I'm not sure." (Def.'s Br. at 8.) However, Plaintiff's subjective comment about Defendant's intent is irrelevant. Rather, the relevant inquiry is whether the SAC plausibly alleges that "plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). Whether or not Plaintiff subjectively believed at the time she was terminated that she was the victim of discrimination is not dispositive with respect to the element of intent.

III. <u>Plaintiff's Failure to Hire Claims Shall Proceed to Discovery</u>

Plaintiff alleges that Defendants failed to hire her because of her gender in violation of Title VII and the NYSHRL. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NYSHRL contains a similar provision. <u>See</u> N.Y. EXEC. LAW § 296. Thus, in order to state a claim for failure to hire under either Title VII or the NYSHRL, a plaintiff must allege that she (1) applied for a position, (2) that she was qualified for that position, and (3) that she was rejected under circumstances giving rise to an inference of unlawful discrimination. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).

The Court previously dismissed Plaintiff's failure to hire claims, holding that "Plaintiff did not adequately plead that Defendant's rejection of her candidacy for full-time employment arose under circumstances giving rise to an inference of discrimination." <u>Carr</u>, 2015 WL 4603389, at *4. Previously, Plaintiff only alleged that Demers made a single comment implicating Plaintiff's sex and religion. <u>Id.</u> at *3. Following the submission of Plaintiff's SAC, Defendant again moves to

8

dismiss, arguing that the SAC still does not contain sufficient evidence of discriminatory intent. (Def.'s Br. at 11.)

Although a single stray mark does not support an inference of discriminatory intent, multiple comments showing that a decision-maker harbored discriminatory animus against the plaintiff can provide enough evidence to allow the plaintiff's discrimination claim to proceed to discovery. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (explaining that the plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" to survive a motion to dismiss) (internal quotation marks and citation omitted); Compare Jowers v. Family Dollar Stores, Inc., No. 09-CV-2620, 2010 WL 3528978, at *1, 3 (S.D.N.Y. Aug. 16, 2010) (noting that the single statement that "black people are lazy and incompetent" just eight days prior to the plaintiff's termination was a stray remark insufficient to establish an inference of discrimination on its own), aff'd, 455 F. App'x 100 (2d Cir. 2012); with Chavez v. Credit Nation Auto Sales, LLC, --- F. App'x ----, 2016 WL 158820, at *6 (11th Cir. 2016) (finding that numerous minor comments about and employee's transgender status, coupled with the defendant's failure to follow its own progressive disciplinary process constituted sufficient evidence to create an issue of material fact regarding the employer's discriminatory intent).

9

Unlike Plaintiff's Amended Complaint, the SAC provides enough circumstantial evidence of discriminatory intent to allow Plaintiff's failure to hire claim to survive Defendant's motion. Although much of the conduct described in the SAC lacks a tangible link to a discriminatory purpose, Plaintiff claims that her supervisor made specific negative comments about her gender on three separate occasions. Specifically, Demers (1) told Plaintiff she could not use the women's restroom, (2) refused to allow her to participate in an examination, stating "only females are allowed beyond this point"; and (3) told Plaintiff that Jesus does not recognize her religion, and told others that "he-shes . . . and the gays will needs to answer to Jesus some day." Moreover, Plaintiff was terminated via email on the same day Demers made her last comments about Plaintiff's gender and religion. Smith v. Tuckahoe Union Free Sch. Dist., No. 03-CV-7951, 2009 WL 3170302, at *7 (S.D.N.Y. Sept. 30, 2009) (finding that a supervisors use of a racial slur the day before he recommended the plaintiff be terminated constituted evidence of racial animus). Demers' comments, combined with the circumstances under which Plaintiff's externship was abruptly ended, collectively provide circumstantial evidence of discriminatory animus sufficient allow Plaintiff's failure to hire claims to proceed to discovery.

IV. Plaintiff's Discrimination Claims Fail

In addition to Plaintiff's failure to hire claims

brought pursuant to Title VII and the NYSHRL, Plaintiff also asserts a separate allegations for "unlawful discrimination." (SAC ¶¶ 35-36.). But since Plaintiff was never actually Defendant's employee, but rather an unpaid extern, she cannot maintain a claim for discrimination separate and apart from her failure to hire allegations. See Carr, 2015 WL 4603389, at n.3; Wang v. Phoenix Satellite Television US, Inc., 976 F. Supp. 2d 527, 532-33 (S.D.N.Y. 2013) (holding that an unpaid intern is not considered an employee because compensation is the "threshold issue in determining the existence of an employment relationship under both Title VII and NYSHRL"); O'Connor v. Davis, 126 F.3d 112, 115-16 (2d Cir. 1997) (stating that there is an "essential condition of remuneration" that has been recognized in the Second Circuit and that an unpaid intern is not an "employee" under Title VII) (internal quotation marks omitted); Tadros v. Coleman, 898 F.2d 10, 11 (2d Cir. 1990) (holding that as a visiting lecturer, plaintiff received no salary, and was not an employee under Title VII). Therefore, Plaintiff's "unlawful discrimination" claims are DISMISSED WITH PREJUDICE.[2]

---

[2] Defendant also argues that Plaintiff's NYSHRL claims should be dismissed based upon the election of remedies doctrine. (Def.'s Br. at 11-12.) However, the Court need not consider Defendant's election of remedies argument on a motion to dismiss, since the argument relies upon documents outside of the pleadings. Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d

11

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Docket Entry 28) is GRANTED IN PART and DENIED IN PART.  To the extent that Plaintiff seeks to assert discrimination claims separate and apart from her failure to hire allegations, Plaintiff's "unlawful discrimination" claims are DISMISSED WITH PREJUDICE.  However, Defendant's motion is otherwise DENIED and Plaintiff's failure to hire claims shall proceed to discovery.

SO ORDERED

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Date: June   23  , 2016  
      Central Islip, New York

---

Cir. 1991); Hoo-Chong v. Citimortgage, Inc., No. 15-CV-4051, 2016 WL 868814, at *3 (E.D.N.Y. Mar. 7, 2016)